RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TODD R. ROCHOW and JOHN ROCHOW, personal
representatives of the Estate of Daniel J. Rochow,

        *Plaintiffs-Appellees*,

    *v.*

LIFE INSURANCE COMPANY OF NORTH AMERICA,

        *Defendant-Appellant*.

No. 12-2074

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:04-cv-73628—Arthur J. Tarnow, District Judge.

Argued: June 18, 2014

Decided and Filed: March 5, 2015

BEFORE: COLE, Chief Judge; KEITH, BOGGS, BATCHELDER, MOORE, CLAY, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE, WHITE, STRANCH, and DONALD, Circuit Judges.

    McKEAGUE, J., delivered the opinion of the court in which BOGGS, BATCHELDER, GIBBONS, ROGERS, SUTTON, COOK, GRIFFIN, and KETHLEDGE, JJ., joined, and WHITE, J., joined in part. GIBBONS, J. (pp. 16–18), delivered a separate concurring opinion in which BATCHELDER and COOK, JJ., joined. WHITE, J. (pp. 19–24), delivered a separate opinion concurring in part and dissenting in part. STRANCH, J. (pp. 25–43), delivered a separate dissenting opinion in which COLE, C.J., KEITH, MOORE, CLAY, and DONALD, JJ., joined, and WHITE, J., joined in part.

───────────────

## COUNSEL

**ARGUED:** Jeremy P. Blumenfeld, MORGAN, LEWIS, BOCKIUS LLP, Philadelphia, Pennsylvania, for Appellant. Erik W. Scharf, SCHARF APPELLATE GROUP, Miami, Florida, for Appellees. **ON BRIEF:** Jeremy P. Blumenfeld, MORGAN, LEWIS, BOCKIUS LLP, Philadelphia, Pennsylvania, Brian T. Quinn, HONIGMAN MILLER SCHWARTZ & COHN, LLP, Lansing, Michigan, for Appellant. Erik W. Scharf, SCHARF APPELLATE GROUP,

1

Miami, Florida, John J. Cooper, COOPER LAW FIRM, PLLC, Troy, Michigan, for Appellees. Waldemar J. Pflepsen, Jr., CARLTON FIELDS JORDEN BURT, P.A., Washington, D.C., Jerrold J. Ganzfried, HOLLAND & KNIGHT LLP, Washington, D.C., Julie Wilensky, LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C., Oakland, California, Mary Ellen signorille, AARP, Washington, D.C., Mark D. DeBofsky, DEBOFSKY & ASSOCIATES, P.C., Chicago, Illinois, for Amici Curiae.

---

**OPINION**

---

McKEAGUE, Circuit Judge.  This is the second time this case has been before the Sixth Circuit.  The first time, we affirmed the district court's determination that defendant Life Insurance Company of North America ("LINA") acted arbitrarily and capriciously when it denied Daniel Rochow's claim for long-term disability benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").  *Rochow v. LINA*, 482 F.3d 860 (6th Cir. 2007) ("*Rochow I*").  Our second review comes after the district court ordered that LINA disgorge profits flowing from its wrongful denial of benefits.  A divided three-judge panel affirmed the district court's order.  *Rochow v. LINA*, 737 F.3d 415 (6th Cir. 2013) ("*Rochow II*"). We granted rehearing en banc, thereby vacating *Rochow II*, in order to reconsider as a full court whether the disgorgement award was proper.  For the reasons that follow, we vacate the disgorgement award and remand the case to the district court to determine whether prejudgment interest is appropriate.

**I**

The facts of this case are adequately summarized in *Rochow II* and are reproduced here:

In mid-2000, the late Daniel J. Rochow ("Rochow"), a principal of Universico Insurance Company ("Universico"), sold his interest in Universico to Arthur J. Gallagher & Co. ("Gallagher") and became President of Gallagher.  As an employee of Gallagher, Rochow was covered under Life Insurance Company of North America ("LINA") policy number LK 30214. LINA's policy provided for disability benefits if an employee gave "satisfactory proof" that "solely because of Injury or Sickness [the employee is] unable to perform all material duties of [his or her] Regular Occupation or a Qualified Alternative[.]"  *See Rochow v. LINA* ("*Rochow I*"), 482 F.3d 860, 863–64 (6th Cir. 2007).

In 2001, Rochow began to experience short term memory loss, occasional chills, sporadic sweating, and stress at work. *Id.* In July 2001, Gallagher demoted Rochow from President to Sales Executive-Account Manager because Rochow could no longer perform his duties as President. *Id.* Rochow continued to have difficulties, and as a result of his inability to perform his job, Gallagher forced Rochow to resign effective January 2, 2002. *Id.* In February 2002, Rochow experienced periods of amnesia and was hospitalized. *Id.* During his February 2002 hospital stay, Rochow was diagnosed with HSV-Encephalitis, a rare and severely debilitating brain infection. *Id.*

On or about December 31, 2002, Rochow filed a claim for long term disability benefits. LINA denied Rochow benefits stating that Rochow's employment ended before his disability began. *Rochow I*, 482 F.3d at 864.

Rochow appealed LINA's denial and included medical records from 2001 that stated Rochow was suffering short-term memory loss during 2001. In denying Rochow's appeal, LINA noted that Rochow experienced the effects of encephalitis during 2001 but denied coverage because Rochow continued to work and was not disabled until February 2002. *Rochow I*, 482 F.3d at 864.

Rochow again appealed and included a report from Jack Tellerico, an area vice president for Gallagher, which identified the material duties of Rochow's position with Gallagher and stated that during 2001, Rochow was not able to perform all the material duties of those jobs due to his lack of memory. LINA again denied Rochow's claims stating, "[s]ince, Mr. Rochow's long-term disability claim was not filed until after his termination date; his claim was denied because of, 'not considered actively working at time of disability.' It appears no additional documentation was provided which would support that Mr. Rochow was actively working when he became disabled.'" (Page ID 4056) (Joint App'x) (sic).

Rochow appealed the denial a third time. LINA denied his claim for the final time stating Rochow had not presented any medical records to support his inability to work prior to the date he was terminated.

On September 17, 2004, Rochow filed a complaint against Cigna Group Insurance, LINA's parent company, in the United States District Court for the Eastern District of Michigan. Compl., ECF No. 1. The complaint states two claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3): one to recover full benefits due to the failure to pay benefits in violation of the terms of the plan and one to remedy the alleged breach of fiduciary duty in ERISA Section 404(a), 29 U.S.C. § 1104(a).

Defendant moved for judgment on the record and Plaintiff moved for summary judgment. On June 24, 2005, Judge Tarnow of the United States District Court for the Eastern District of Michigan heard oral arguments on the parties' motions. At the conclusion of oral argument, Judge Tarnow stated on the record that LINA acted arbitrarily and capriciously in finding Rochow was not disabled while still employed and that Rochow had prevailed. In a one page order which incorporated the reasoning stated on the record, the Court granted Rochow's

motion and denied LINA's motion. The same day, the district court clerk filed a judgment which purported to dismiss the case and was signed by the district court clerk and Judge Tarnow.

LINA appealed the June 24, 2005 Order denying Defendant's motion and granting Plaintiff's motion. Rochow moved to enforce judgment or require Defendant to post a supersedeas bond pursuant to Federal Rule of Civil Procedure 62(d). Eventually this motion was withdrawn and Defendant deposited a supersedeas bond in the amount of $250,000.

On April 3, 2007, a panel of this Court affirmed Judge Tarnow's Order. *Rochow I*, 482 F.3d at 866. The *Rochow I* panel held the record supported the district court's decision that LINA's denial of Rochow's claims was arbitrary and capricious, was not the result of a deliberate, principled reasoning process, and did not appear to have been made "'solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries' as required by ERISA. 29 U.S.C. § 1104(A)(1)." *Id.* The opinion noted, "there is no 'logical incompatibility between working full time and being disabled from working full time'" and that the policy required only "satisfactory proof of disability, not medical evidence." *Id.* (internal citations omitted). On the same day, the clerk for this Court entered judgment stating "the order of the district court is AFFIRMED." The clerk of this Court issued the mandate on April 26, 2007, and it was filed May 3, 2007.

On May 10, 2007, the parties filed a stipulation "to toll the time for all parties and counsel to bring any post remand motions," and the district court entered an Order tolling the filing deadlines for post-remand motions until further order of the court. On April 3, 2008, the district court referred the remaining issues in dispute to United States Magistrate Judge Whalen. Over the next few months, Judge Whalen held several status conferences.

On November 10, 2008, LINA filed a statement of resolved and unresolved issues and Plaintiff[1] filed motions for attorneys' fees and costs and equitable accounting. LINA's statement of issues represented that the parties still disputed several issues, including whether Plaintiff was entitled to a disgorgement of profits.

Plaintiff also filed a motion seeking an equitable accounting and a request for disgorgement. In that motion, Plaintiff argued Rochow's estate was entitled to disgorgement of profits because LINA breached its fiduciary duties, and disgorgement was necessary to prevent LINA's unjust enrichment resulting from

---

[1]Rochow died on October 16, 2008, and the representative of his estate, Patrick Rochow, was substituted as plaintiff in this action. Later, Todd R. Rochow and John D. Rochow were substituted as administrators of Daniel Rochow's estate and as plaintiffs in this case. For consistency, this opinion refers to all litigation actions taken on behalf of Rochow's estate as actions by [Rochow].

profits it earned on the wrongfully retained benefits. Plaintiff supported the motion with the report of his expert, Dr. David C. Crosen. In calculating LINA's "Return on (Average) Equity" ("ROE"), Dr. Crosen determined LINA used Rochow's benefits to earn between 11 percent and 39 percent annually and, therefore, made approximately $2.8 million by retaining Rochow's benefits.

In June 2009, the district court granted Plaintiff's motion for an equitable accounting of profits and disgorgement of the same. LINA then moved to strike Croson's report and to preclude him from testifying as an expert on the ground that his principles and methods were unreliable under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The motion was referred to the magistrate judge, who issued a report recommending that the motion be denied, noting that the matter was being tried to the court rather than a jury and finding that many of LINA's objections went to the weight of Croson's opinions, not their admissibility. The district court adopted the magistrate judge's recommendation over LINA's objections.

After the parties briefed the issue, the district court conducted an evidentiary hearing in November 2011 on the issue of calculation of profits for disgorgement. At the hearing, LINA offered the testimony of its expert, Timothy Holzli, who served as the Chief Accounting Officer for the group insurance division of Cigna. Holzli opined Rochow's withheld benefits earned LINA profits of $32,732. He arrived at that figure by treating the withheld benefits as though they were earning interest as part of LINA's investment assets. On cross examination, Holzli acknowledged, however, that the account was not a separate or segregated account. He also conceded that LINA payed [sic] its operating expenses and benefits from the account, and the money in the account formed a basis for LINA to write insurance coverage.

Following additional briefing and oral argument, the district court issued its decision on calculation of profits for disgorgement in March 2012.[2] The district court adopted Croson's ROE metric as the basis for determining the profits LINA gained from the wrongfully withheld funds, and it rejected Holzli's retained investment margin metric. It did so, in part, based upon its factual finding that the subject money was not placed in a separate investment account, but rather was available for LINA to use for any business purpose. In the last paragraph of its decision, the district court stated:

> Plaintiff will, within two weeks from this order, submit a final amount to be disgorged by Defendant based upon the Court's rulings, above. Defendant may then submit a memorandum in

---

[2]The district court's decision is reported at *Rochow v. LINA*, 851 F. Supp. 2d 1090 (E.D. Mich. 2012).

> response within seven days.  This memorandum is limited only to any objections regarding the accuracy of Plaintiff's calculations based on this order, and is not an invitation to relitigate issues already decided by this Court.

(Page ID 3576).

> On May 4, 2012, in its response brief to Plaintiff's final calculation of disgorgement, LINA argued for the first time that permitting disgorgement was outside the scope of the mandate in the first appeal.  Nonetheless, on July 24, 2012, the district court ordered disgorgement of $3,797,867.92.  The court noted, "Defendant has, in response to a proposed order submitted by Plaintiff, raised objections.  To the extent that these objections do not simply repeat arguments already rejected by the Court, and raise new issues in Defendant's argument concerning the 'mandate rule,' they are untimely and will not be considered." (Page ID 3907).  LINA timely appealed.

*Rochow II*, 737 F.3d at 417–20 (alteration in original).

On December 6, 2013, a panel of this court affirmed the disgorgement award, holding that disgorgement was properly ordered under ERISA § 502(a)(3) for LINA's breach of fiduciary duty and that Rochow's claim for such relief was not an impermissible repackaging of a claim for wrongful denial of benefits under § 502(a)(1)(B).  *Id.* at 423.  The *Rochow II* panel stated that the successful result obtained by Rochow on his claim for wrongful denial of benefits in *Rochow I* did not preclude additional relief on Rochow's breach-of-fiduciary-duty claim.  *Id.* at 422–23.  LINA's petition for en banc rehearing was granted on February 19, 2014, vacating the panel's decision in *Rochow II*.

## II

There is essentially one issue before us:  Is Rochow entitled to recover under both ERISA § 502(a)(1)(B) and § 502(a)(3) for LINA's arbitrary and capricious denial of long-term disability benefits?  As a result of our ruling in *Rochow I*, Rochow recovered all benefits that he had been wrongfully denied under § 502(a)(1)(B).  We now decide whether Rochow may also recover under § 502(a)(3), which makes "appropriate equitable relief" available to redress such violations as a breach of fiduciary duty.[1]  The district court held that Rochow could recover

---

[1]We assume, for present purposes, that the district court made a finding that LINA breached a fiduciary duty owed to Rochow.  However, the district court's various orders are devoid of any such express finding.  When the case was before the district court on the issue of whether the plan administrator arbitrarily and capriciously

under both provisions because Rochow pleaded claims for two distinct kinds of relief, namely one claim to recover benefits arbitrarily and capriciously denied by LINA, and one claim for disgorgement of profits realized by LINA as a result of its breach of fiduciary duty consisting of the arbitrary and capricious denial of benefits. Contrary to Rochow's arguments, Rochow is made whole under § 502(a)(1)(B) through recovery of his disability benefits and attorney's fees, and potential recovery of prejudgment interest, discussed below. Allowing Rochow to recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would—absent a showing that the § 502(a)(1)(B) remedy is inadequate—result in an impermissible duplicative recovery, contrary to clear Supreme Court and Sixth Circuit precedent.

ERISA has six remedial provisions. The remedial provisions relevant to this action are § 502(a)(1)(B) and § 502(a)(3), which state:

---

denied benefits, the court ruled from the bench in granting summary judgment for Rochow. The transcript of the hearing reveals no express finding of a breach of fiduciary duty. R. 19, Hearing Tr. at 24, Page ID 4095. Further, the one-page order that memorialized the district court's ruling includes the finding simply that "the denial of Plaintiff's claim was arbitrary and capricious." R. 16, Order at 1, Page ID 105. There is no mention of a breach of fiduciary duty. The judgment order that issued the same day, apart from granting Rochow's claim for benefits wrongfully denied, "dismissed" the case. That is, the district court appeared to have dismissed the breach-of-fiduciary-duty claim as a claim pled in the alternative and rendered moot by Rochow's success on the principal claim. R. 17, Judgment, Page ID 106.

In *Rochow I*, similarly, we did not address any claim for breach of fiduciary duty, or even use the terms "fiduciary," "duty," or "breach" in the opinion. Admittedly, one could infer from *Rochow I* that LINA's fiduciary duty was alluded to in the observation that LINA's decision did not appear to have been made "'solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries' as required by ERISA. 29 U.S.C. § 1104(a)(1)." *See Rochow I*, 482 F.3d at 866. However, no ruling on a breach-of-fiduciary-duty claim was before the court and the opinion contains no analysis of the point.

After the district court's initial decision was affirmed and the district court took up the motion for equitable accounting, however, the court rejected LINA's argument that it had not made the requisite finding of a breach of fiduciary duty to trigger the availability of equitable relief. Citing *Varity*, the court stated, "an arbitrary or capricious denial of benefits can count as a breach of fiduciary duty." R. 67, Order at 4, Page ID 935. Further, when the district court set the method of accounting for the disgorgement award, it stated "it has already been determined that Defendant owed Plaintiff a duty of loyalty and breached this duty through its arbitrary and capricious denial of disability benefits to Plaintiff." R. 113, Order at 2, Page ID 3562. The district court thus treated its finding of an arbitrary and capricious denial of benefits, in and of itself, as a breach of fiduciary duty. The district court never identified any other grounds for finding a breach of a fiduciary duty. In the district court's ruling, it was one and the same injury that made out two distinct ERISA violations and justified both remedies.

Though we are aware of no persuasive authority for the proposition that a wrongful denial of benefits in and of itself constitutes a breach of fiduciary duty remediable under both § 502(a)(1)(B) and § 502(a)(3), we assume, without deciding, that the district court permissibly found a breach of fiduciary duty based on the administrator's arbitrary and capricious denial of benefits. The dissenting opinion suggests other ways in which LINA might be deemed to have breached a fiduciary duty, but the district court's judgment now under review clearly includes no such ruling. Careful review of the district court rulings cited in the dissent discloses that the asserted findings of other instances of misconduct by LINA were not identified by the district court as grounds for holding that LINA breached its fiduciary duty.

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

    . . .

    (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights under the terms of the plan;

    . . .

    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

Unfortunately for Rochow, Supreme Court precedent construing the interplay of these provisions dictates a result contrary to that reached by the district court. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court allowed a group of plaintiffs, who were unable to bring a claim under § 502(a)(1)(B), to bring suit for breach of fiduciary duty under § 502(a)(3). As the Court explained, § 502(a)(3) "functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 513. Importantly, however, the *Varity* Court limited this expansion of ERISA coverage by noting that "where Congress elsewhere provided *adequate* relief for a beneficiary's *injury*, there will likely be *no need* for further equitable relief, in which case such relief normally would *not be appropriate*." *Id.* at 515 (emphasis added) (internal quotation marks omitted).

The *Varity* Court thus emphasized that ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing. The district court's use of equitable relief under § 502(a)(3) as the vehicle for its disgorgement award misses the mark. Instead of focusing on the relief available to make Rochow whole, the award reflects concern that LINA had wrongfully gained something, a consideration beyond the ken of ERISA make-whole remedies. *Varity* indicates that equitable relief is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant's injury. In other words, a claimant cannot pursue a breach-of-fiduciary-duty claim under § 502(a)(3) based

solely on an arbitrary and capricious denial of benefits where the § 502(a)(1)(B) remedy is adequate to make the claimant whole.  Here, there is no showing that the benefits recovered by Rochow, plus the attorney's fees awarded, plus the prejudgment interest that *may* be awarded on remand, are inadequate to make Rochow whole.  Absent such a showing, there is no trigger for "further equitable relief" under *Varity*.

If an arbitrary and capricious denial of benefits implicated a breach of fiduciary duty entitling the claimant to disgorgement of the defendant's profits in addition to recovery of benefits, then equitable relief would be potentially available whenever a benefits denial is held to be arbitrary or capricious.  This would be plainly beyond and inconsistent with ERISA's purpose to make claimants whole.  Tellingly, the appellate briefing contains citation to no case that allowed disgorgement of profits under § 502(a)(3) after the claimant recovered for wrongful denial of benefits under § 502(a)(1)(B).

Here in the Sixth Circuit we have had occasion to apply *Varity*'s teaching on the relationship between § 502(a)(1)(B) and § 502(a)(3) in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998).  In *Wilkins*, Wilkins applied for long-term disability benefits and, after the plan administrator denied his claim, sued for benefits under § 502(a)(1)(B) and for equitable relief under § 502(a)(3) based on breach of fiduciary duty.  We denied relief under § 502(a)(3) stating:

> Because [§ 502(a)(1)(B)] provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 502(a)(3)].

*Id.* at 615.  Just like the plaintiff in *Wilkins*, Rochow is not entitled to relief under the catchall provision:  such relief is unnecessary and unavailable because he has an adequate remedy under § 502(a)(1)(B).

LINA thus contends the district court's disgorgement award contravenes *Wilkins* and allows a claimant to improperly repackage a claim for benefits wrongfully denied as a cause of action for breach of fiduciary duty.  Rochow insists that *Wilkins* provided a way to ensure only that claimants do not attempt an "end run" around ERISA's limitations by repackaging an *unsuccessful claim for benefits* as a claim for "appropriate relief" based on an alleged breach of

fiduciary duty. Rochow claims that *Wilkins* bars relief sought under § 502(a)(3) *only if* that same type of relief could have been obtained under § 502(a)(1)(B). Because he purportedly seeks a type of relief under § 502(a)(3) (i.e., disgorgement of LINA's profits) different from and in addition to what is available to him under § 502(a)(1)(B), Rochow contends that *Wilkins* does not preclude his claim for this additional remedy to obtain complete relief.

Rochow mischaracterizes *Wilkins*. A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–42 (6th Cir. 2007). *Wilkins* simply affords no support for the argument that § 502(a)(3) equitable relief may be appropriate to further redress a wrongful denial of benefits adequately remediable under § 502(a)(1)(B). Rather, *Wilkins* makes clear that the availability of relief under § 502(a)(3) is contingent on a showing that the claimant could not avail himself or herself of an adequate remedy pursuant to § 502(a)(1)(B). *Wilkins*, 150 F.3d at 615.

Rochow contends there is no legitimate concern about impermissible claim "repackaging" when a benefits-claimant prevails and seeks "*other* appropriate equitable relief." We disagree. Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury. Because Rochow was able to avail himself of an adequate remedy for LINA's wrongful denial of benefits pursuant to § 502(a)(1)(B), he cannot obtain additional relief for that same injury under § 502(a)(3).

In *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005), we further clarified the interplay of § 502(a)(1)(B) and § 502(a)(3). In *Hill*, the plaintiffs brought a class-action lawsuit seeking individual relief for wrongfully denied benefits under § 502(a)(1)(B) and for plan-wide injunctive relief under § 502(a)(3) based upon the defendant's alleged breach of its fiduciary duty. The district court dismissed the § 502(a)(3) claim, finding that "these claims were merely repackaged claims for individual benefits and did not constitute actual

fiduciary-duty claims." *Id.* at 717.  We reversed.  Whereas *Wilkins* involved the rejection of fiduciary-duty claims on the basis that they were actually disguised individual-benefits claims, in *Hill* the need for relief under the catchall provision arose out of a defect in *plan-wide* claim handling procedures, implicating a different injury.  "The award of benefits to a particular [plaintiff] based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [defendant] is using an allegedly improper methodology for handling . . . claims."  *Id.* at 718.  To remedy *this* separate and distinct injury, we permitted injunctive relief under § 502(a)(3), not an additional award of monetary damages for the same denial of benefits. Thus, *Hill* recognized an exception to *Varity* and *Wilkins* where "[o]nly *injunctive relief* of the type available under [§ 502(a)(3) would] provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all the Program's claims . . . ." *Id.* at 718 (emphasis added).  In *Hill*, as in *Varity*, the primary purpose of ERISA was given effect—ensuring availability of an adequate remedy to make the plaintiffs whole.

The present case does not fall within the *Hill* exception to *Varity* and *Wilkins*.  *Hill* distinguished between the denial of individual claims and plan-wide mishandling of claims as two distinct injuries.  Section 502(a)(1)(B) provided relief for the denial of the *Hill* plaintiffs' individual benefits, and § 502(a)(3) remedied the systemic plan-wide problems that posed a potential for future injury.  Contrast *Hill* with the present case, where the only asserted injury to Rochow is the denial of benefits and withholding of the same benefits.  These are not distinct injuries; they are one and the same injury.  Because Rochow has an adequate and effective remedy for this injury under § 502(a)(1)(B), he is not also entitled to relief under § 502(a)(3).

Rochow continues to claim that the disgorgement award ("equitable accounting") remedies an injury entirely distinct from the injury remedied by recovery of his benefits, and that he has therefore suffered two distinct injuries.  Rochow contends that he suffered his first injury when LINA improperly denied his benefits, and he suffered his second "injury" when LINA used the funds it owed him to generate $3.7 million in profits for its own account without remitting the profits to him.  Yet, in an action for wrongful denial of benefits, like this one, the denial of benefits necessarily results in a continued withholding of benefits until the denial is either finalized or rectified.  The denial is the injury and the withholding is simply ancillary

thereto, the continuing effect of the same denial.  Together they comprise a single injury.  By withholding payment of benefits until the denial was either finalized or rectified, LINA did not violate a second, distinct duty owed to Rochow and did not inflict a second injury.

Nor can it be said that Rochow suffered a second injury, or that his injury was exacerbated, as a result of any gain realized by LINA before it paid the wrongfully withheld benefits.  Rochow's loss remained exactly the same irrespective of the use made by LINA of the withheld benefits.  Despite Rochow's creative use of semantics, the reality remains clear: Rochow suffered one injury, the denial of his benefits.  And neither Rochow nor the dissent has succeeded in identifying any way in which the remedy available under § 502(a)(1)(B)—i.e., recovery of benefits and attorney's fees and, potentially, prejudgment interest—is inadequate to make Rochow whole.  The remedy Congress chose to make available under § 502(a)(1)(B) having thus not been shown to be inadequate, it follows that permitting Rochow to obtain further equitable relief for the same injury under § 502(a)(3) would contravene the scheme established by Congress as well as the Supreme Court's teaching in *Varity*.

Rochow cites two cases to support his claim that he is entitled to equitable relief under § 502(a)(3).  He contends that *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406 (3d Cir. 2013), stands for the proposition that disgorgement of profits may be an appropriate remedy for breach of fiduciary duty even in the absence of a showing of financial loss by the claimant.  The discussion in *Edmonson* on which Rochow relies is addressed solely to the question whether an ERISA claimant had standing to bring a claim for disgorgement of profits notwithstanding a lack of showing of financial loss.  The court answered this question in the affirmative, based on trust law principles.  *Id.* at 415–17.  However, the court ultimately denied relief for lack of a showing of a breach of fiduciary duty and lack of a showing that any such breach proximately caused injury to the claimant.  *Id.* at 423–26.  There was no claim in *Edmonson* for benefits wrongfully denied, but only a stand-alone claim for breach of fiduciary duty.  Hence, the *Edmonson* court did not have occasion to address the interplay of § 502(a)(1)(B) and § 502(a)(3) or to consider whether the availability of other remedies under ERISA rendered equitable relief under § 502(a)(3) inappropriate.  *Edmonson*'s observations about standing, viewed in context, are of limited significance to the issue before us.

Rochow also relies on *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011), to support his argument that the failure to show a second, distinct injury is not fatal to his disgorgement award under § 502(a)(3). In *Amara*, he contends, the Court recognized that in an action for equitable relief under § 502(a)(3), the requisite "actual harm" may consist simply of "the loss of a right protected by ERISA or its trust-law antecedents." *Id.* at 1881. Again, the argument misses the point. There is no dispute that "appropriate equitable relief" may be obtained under § 502(a)(3) to redress an ERISA violation by a plan fiduciary. The point, as detailed above, is that Rochow did not suffer an injury remediable under § 502(a)(3) in this case. Rochow suffered the wrongful denial of his benefits, an injury adequately remedied under § 502(a)(1)(B). Despite Rochow's insistence to the contrary, his breach-of-fiduciary-duty claim for disgorgement of profits is nothing but a repackaged claim for benefits wrongfully denied, a claim for which, per *Varity*, additional equitable relief is not appropriate because not necessary to make Rochow whole. Rochow's reliance on *Amara* is to no avail.

Rochow insists that *Varity* and *Amara*, read together, indicate that a plaintiff may obtain relief under both § 502(a)(1)(B) and § 502(a)(3) if "other appropriate equitable relief" is necessary to make the plaintiff whole for injury caused by the wrongful denial of benefits. He argues that *Varity* made clear that "other appropriate equitable relief" may be available under § 502(a)(3) when a party cannot obtain relief under § 502(a)(1)(B). Further, *Amara* identified a range of equitable remedies potentially available under § 502(a)(3), including surcharge.[2] Reading *Varity* and *Amara* together thus supports the notion, Rochow contends, that disgorgement of profits is available in the instant case because recovery of benefits under § 502(a)(1)(B) did not make him whole for the injury caused by LINA's breach of fiduciary duty.

Rochow's reading misses a logical step: "other appropriate equitable relief" is not necessary to make him whole. While *Varity* certainly acknowledges the possibility of equitable

---

[2]The statements made by the Supreme Court in *Amara* regarding the equitable remedies available to courts under § 502(a)(3) are merely dicta. The sole question before the Court in *Amara* was whether the district court applied the correct legal standard in determining whether CIGNA's failure to inform its employees of changes to the benefits plan caused its employees sufficient injury to warrant legal relief. *Amara*, 131 S. Ct. at 1871. The Court also discussed whether § 502(a)(1)(B) authorized the relief the district court awarded. In finding that § 502(a)(1)(B) was not the appropriate remedy, the Court went on to acknowledge that § 502(a)(3) authorizes forms of relief similar to § 502(a)(1)(B). However, the Court did not decide what remedies were available, and did not conclusively decide which remedy was appropriate in the case before it. *Id.* at 1880.

relief, and *Amara* outlines the scope of potential equitable relief, when appropriate, the Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury. Rochow claims two injuries—the arbitrary and capricious denial of benefits, and the breach of fiduciary duty consisting of the continued withholding of the wrongfully denied benefits. These "injuries," however, as explained above, are indistinguishable. The Court in *Varity* made clear that equitable relief is not ordinarily appropriate where Congress has provided adequate relief for a claimant's injury. The purpose behind ERISA continues to be remedial, and Rochow's injury was remedied when he was awarded the wrongfully denied benefits and attorney's fees—as potentially supplemented by award of prejudgment interest, still to be determined. Despite Rochow's attempts to obtain equitable relief by repackaging the wrongful denial of benefits claim as a breach-of-fiduciary-duty claim, there is but one remediable injury and it is properly and adequately remedied under § 502(a)(1)(B). Rochow and our dissenting colleagues wholly fail to explain *how* his § 502(a)(1)(B) remedies are inadequate to remedy his *injury*.

Rochow's final argument is that even if the disgorgement relief is not available under § 502(a)(3), he is entitled to prejudgment interest under § 502(a)(1)(B), a matter the district court failed to address. We acknowledge that prejudgment interest may be awarded in an appropriate case under ERISA. "Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court. Awards of prejudgment interest are *compensatory*, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1103 (6th Cir. 1993), *cert. denied,* 511 U.S. 1005 (1993) (internal quotations and citations omitted); *see also Wells v. U.S. Steel*, 76 F.3d 731, 737 (6th Cir. 1996) (holding that district court did not abuse its discretion in awarding prejudgment interest when pension fund wrongfully withheld benefits).

Prejudgment interest cannot be awarded, however, at a rate so high that the award amounts to punitive damages:

> Although prejudgment interest is typically not punitive, an excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive

one in contravention of ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing.

*Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). An interest award should "simply compensate a beneficiary for the lost interest value of money wrongfully withheld from him or her." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford*, 154 F.3d at 618). An excessive prejudgment interest rate would "contravene ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing." *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013). Conversely, an exceedingly low award would fail to make the plaintiff whole. *Id.*

Rochow's request for prejudgment interest appears to be a remedy the district court could have granted, though not at an excessive rate. In his initial complaint, Rochow requested various forms of relief, including an "[o]rder compelling Defendant to pay Plaintiff forthwith the full amount of employee benefits due him and to continue such payments for a period set forth in the Plan, including interest on all unpaid benefits." R. 1, Compl. at 6, Page ID 6. Rochow also requested "[r]easonable attorney fees and costs" and "[s]uch other relief as may be just and appropriate." *Id.* When the case was remanded to the district court following *Rochow I*, the parties treated prejudgment interest as a live issue, fully briefing the issue in connection with the proceedings on equitable remedies. Yet when disgorgement of profits was ordered, the question of prejudgment interest was given no further consideration. Rochow thus prayed for such relief in his complaint and has preserved his request throughout the proceedings. The issue having been thus far been pretermitted through no fault of the parties, we remand the case once more to the district court for fresh consideration of Rochow's entitlement to prejudgment interest.

### III

For the reasons stated above, we **VACATE** the district court's disgorgement award under § 502(a)(3) and **REMAND** the case to the district court for consideration of whether and, if so, to what extent, award of prejudgment interest is warranted under § 502(a)(1)(B) to make Rochow whole.

_____

**CONCURRENCE**

_____

JULIA SMITH GIBBONS, Circuit Judge, concurring.   If one accepts the rather charitable assumptions made in footnote 1 of the majority opinion, its reasoning is entirely correct.  For that reason I concur in it.  I write separately to note, however, that if one does not make those assumptions, the district court's disgorgement order cannot stand for purely procedural reasons.

Rochow's complaint stated two claims: He alleged that LINA wrongfully denied him benefits under 29 U.S.C. § 1132(a)(1)(B), and he alleged that in doing so, LINA breached its fiduciary duties under 29 U.S.C. § 1104(a).  The second claim was styled as one arising under 29 U.S.C. § 1132(a)(3).  In his prayer for relief, in addition to seeking an order compelling LINA to pay him the benefits he believed he was due, Rochow sought disgorgement of any profits that LINA had obtained as a result of its conduct.

The parties filed cross-motions for summary judgment.  LINA requested that the district court affirm its denial of Rochow's claim for benefits.  Rochow asserted only that LINA erroneously denied him benefits pursuant to § 1132(a)(1)(B).[1]  He styled his summary judgment motion as a motion for partial summary judgment, did not argue his breach-of-fiduciary-duty claim under § 1104(a) and § 1132(a)(3), and did not mention disgorgement.  When the district court issued an order memorializing its from-the-bench grant of Rochow's motion, it granted summary judgment in full and made no mention of Rochow's second claim.

Were there any doubt that Rochow's § 1132(a)(3) claim no longer remained in the suit, the district court's judgment ordered the case "DISMISSED."  This was a final judgment, conferring upon the *Rochow I* panel appellate jurisdiction pursuant to 28 U.S.C. § 1291.  There was no other basis for appellate jurisdiction, as the district court did not issue an injunction triggering the application of 28 U.S.C. § 1292(a), nor did it certify the case for interlocutory

_____

[1]Among the other relief he sought, Rochow requested "[a] full and accurate accounting by Defendant of all computations for Plaintiff's disability benefits in sufficient detail so that Plaintiff may ascertain that his benefits are being paid in the proper amount."

appeal pursuant to 28 U.S.C. § 1292(b).  Rochow raised no issue on appeal regarding the district court's failure to address his breach of fiduciary duty claim.  The *Rochow I* panel affirmed the district court's grant of Rochow's motion for summary judgment, thus ending the case.  The district court had ordered the case dismissed.  A panel of this court had affirmed.  And the panel did *not* remand the case to the district court.

Pursuant to the parties' stipulation, however, the district court agreed to accept "post-remand" motions.  But the case had never been remanded, and, of course, the parties could not stipulate to the district court's retention of jurisdiction.  Still, the district court permitted Rochow to resuscitate his abandoned disgorgement claim, after Rochow moved for the court "to supervise the equitable accounting granted with summary judgment."  This motion was highly problematic.  For starters, the district court never granted equitable accounting as part of its summary judgment order.  And to the extent Rochow mentioned "accounting" in his motion for summary judgment, he sought an accounting of the amount of benefits due so that he could ensure "that his benefits [we]re being paid in the proper amount," not equitable accounting tantamount to disgorgement.  LINA is not without fault either.  It spent years litigating the case without bringing these procedural defects to the district court's attention.

When the district court finally granted Rochow's motion for equitable accounting and ordered LINA to disgorge profits, it violated the mandate rule.  The mandate rule is a multi-faceted "rule" governing the relationship between the courts of appeals and the district courts.  Its fundamental principle is straightforward: A district court may not contravene an appellate court's mandate.  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  For instance, if a case is remanded, the mandate rule "forecloses relitigation of issues expressly or *impliedly* decided by the appellate court."  *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2004) (internal quotation marks omitted).   And "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so."  *Id*.

Here, the *Rochow I* panel did not remand the case to the district court, so any "post-remand" litigation was contrary to this court's mandate.  *See United States v. Hamilton,* 440 F.3d

693, 697–98 (5th Cir. 2006); *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999).  Even if *Rochow I* could be read as remanding the case to the district court for the issuance of a remedy, a district court violates the mandate rule when it orders an additional remedy beyond that contemplated by the appellate panel's opinion.  *See Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948); *Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Emps.*, 960 F.2d 1187, 1191 (3d Cir. 1992); *Stiller v. Squeez-A-Purse Corp.*, 296 F.2d 504, 506 (6th Cir. 1961).  Since Rochow had abandoned his claim for disgorgement under § 1132(a)(3) by not seeking its resolution in the district court after that court treated a motion for "partial" summary judgment as one warranting summary judgment on all issues and by not raising the district court's failure to resolve the breach of fiduciary duty claim on appeal, the district court violated the mandate rule when it ordered disgorgement.

Our mandate issued on May 3, 2007.  Over *seven* years later this case is still being litigated.  The majority's charitable view of the case's procedural history allows that unfortunate history to continue with some legitimacy.  In short, while I agree with the majority's analysis if one accepts its accommodations in footnote 1 to reposition the case for *en banc* review, I am unable to refrain from presenting another take on the history of this case, one which would preclude the district court's jurisdiction to order any further relief, except the prejudgment interest directed by the majority opinion.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.

I write separately because I do not entirely agree or disagree with either the majority or dissenting opinion. I would vacate the judgment on the basis that the order of disgorgement is not adequately supported. I would, however, permit consideration of a refashioned disgorgement remedy on remand if properly supported.[1]

There is less light between the two opinions than might appear on the surface. The majority understands Rochow's fiduciary-duty claim as a repackaging of his benefits-denial claim, for which it believes Rochow obtained adequate relief as a result of *Rochow I*, 482 F.3d 860 (6th Cir. 2007), and a potential award of prejudgment interest on remand. Operating under this conclusion, the majority holds the district court erred when it ordered LINA to disgorge its profits because ERISA, in its view, precludes "a duplicative or redundant remedy . . . to redress the same injury." Maj. Op. 10. The majority opinion does not, however, appear to foreclose disgorgement as an appropriate equitable remedy under § 502(a)(3) in some cases. The dissent too interprets ERISA to authorize equitable relief, including disgorgement of profits, to remedy distinct injuries, such as a plan administrator's breach of a fiduciary duty owed to plan participants and beneficiaries. Thus, all appear to agree disgorgement of profits is a potential remedy under ERISA. The two opinions part on whether Rochow's fiduciary-duty claim is merely a repackaging of his benefits-denial claim. This, I believe, is a false dichotomy that imposes a requirement not found in ERISA.

I do not agree that the dispositive inquiry governing the availability of equitable relief under § 502(a)(3) is whether the claim is a repackaging of a benefits-denial claim. Rather, the governing inquiry under ERISA is whether other equitable relief is appropriate under the

---

[1]This is not to say that such a remedy would be appropriate, only that it might be and that I would not foreclose it at this point.

circumstances, and the extent to which the equitable disgorgement claim duplicates the benefits-denial claim is one factor to be considered in making that determination.

The statutory framework that authorizes "other appropriate equitable relief" confides the determination whether and what equitable relief is appropriate to judges, who presumably are well equipped to determine when a particular set of circumstances warrants additional relief by focusing on ERISA's objectives. This understanding of and respect for the discretionary role of the courts in evaluating claims for equitable relief is consistent with the Supreme Court's statements in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), which contemplate courts' sound exercise of their discretion in fashioning appropriate equitable relief:

> We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others. Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id.* at 515 (citations and internal quotation marks omitted). *Varity* does not require a showing of a "separate and distinct" injury. Maj. Op. 10; *cf. id.* at 8 (recognizing that *Varity* "emphasized that ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury"). Rather, it speaks of injury for which adequate relief has not been elsewhere provided, uses the qualifying terms "likely" and "normally," and ultimately focuses on the governing word "appropriate." We should, therefore, address whether additional equitable relief is appropriate here, even discuss the types of considerations that should guide the determinations whether and what equitable relief is appropriate, but we should not preemptively disallow equitable remedies in particular circumstances where ERISA has not done so.

Nevertheless, the majority fashions a bifurcated standard, holding that a breach-of-fiduciary-duty claim is actionable under § 502(a)(3) where the claim is based on "an *injury* separate and distinct from the denial of benefits *or* where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Id.* at 10 (second emphasis added). I find this standard both confusing and unnecessary. If the remedy afforded by Congress under § 502(a)(1)(B) is adequate, it should not matter that the beneficiary suffered an injury separate

and distinct from the denial of benefits; I doubt the majority intends otherwise. Conversely, if the remedy afforded by Congress under § 502(a)(1)(B) is inadequate, it also should not matter whether the claimant suffered distinct injuries. Ultimately the question must rest on the majority's second inquiry—whether the "remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." I have no doubt that whether the beneficiary suffered multiple injuries is a factor that is relevant to the ultimate question whether § 502(a)(1)(B) provides adequate relief. But the majority's focus on whether a fiduciary's breach of its duties in denying benefits and then withholding them are "separate and distinct" injuries or a single injury seems irrelevant in light of its conclusion that Rochow failed to show that the relief already received together with the relief that might be awarded on remand is inadequate. The majority implicitly acknowledges the dispositive inquiry with its conclusion that Rochow made "no showing that the benefits [he] recovered . . . , plus the attorney's fees awarded, plus the prejudgment interest that *may* be awarded on remand, are inadequate to make [him] whole." *Id.* at 9.

Further undermining the separate-and-distinct-injury requirement for relief under § 502(a)(3) is the majority's acknowledgement that a plaintiff who recovers benefits under § 502(a)(1)(B) can also obtain "other appropriate equitable relief" under § 502(a)(3) in the form of prejudgment interest, an equitable remedy. The majority allows an interest award even as it asserts that Rochow suffered only one injury that was "adequately remedied under § 502(a)(1)(B)," and that he "did not suffer [a separate and distinct] injury remediable under § 502(a)(3)." *Id.* at 13. Clearly, Rochow was not made whole by the award of benefits and attorney's fees. Nearly seven years elapsed between the time he sought benefits and when LINA finally paid all benefits that were due. Further equitable relief is necessary to compensate Rochow for LINA's extraordinary delay in paying benefits. The majority concedes as much in its remand order directing the district court to consider the award of interest, although it leaves the ultimate determination to the district court. But, having acknowledged the possibility that delay in payment might require further appropriate equitable relief, the majority does not explain why one equitable remedy (interest) may be appropriate in a benefits-denial case, but another equitable remedy (disgorgement) is never appropriate in such a case, except to say that there is only one injury.

There is a valid distinction between the two equitable remedies that has nothing to do with whether there is an injury separate and distinct from the denial of benefits:  Interest is generally compensatory, while disgorgement is generally geared toward deterring future misconduct.  *See Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992); The Law of Trusts and Trustees § 484.  I share the majority's concern that Congress did not intend to turn the routine denial of benefits into the basis for a recovery of benefits and also an array of equitable relief, but I would direct that concern to the question whether, in light of the historic distinction between the two equitable remedies, disgorgement constitutes "other appropriate equitable relief" under the facts of a particular case, and would refrain from announcing what appears to be a blanket rule that bars equitable relief in a benefits-denial case.

Turning to the instant case, the district court did not find that disgorgement of profits is necessary to make Rochow whole, or that Rochow could have earned the same rate of return had he been paid his benefits on time.[2]  Rather, the court's primary basis for awarding further equitable relief was LINA's unjust enrichment, Order, R. 67 at 5–6, and the disgorgement of profits was largely based on the finding that LINA did not segregate Rochow's wrongfully withheld benefits and instead left the amount in its general fund to be used for general operating expenses, *Rochow v. Life Ins. Co. of N. Am.*, 851 F. Supp. 2d 1090, 1097–98 (E.D. Mich. 2012).  The district court reasoned that LINA earned a rate of return on Rochow's benefits that it would not have earned had it segregated the funds in an investment account, and that because Rochow's money was inseparable from LINA's money, he is entitled to a percentage of LINA's return on its investments during this period.  However, the district court did not find that either the Plan or ERISA required that Rochow's disputed benefits be segregated pending resolution of the claim.  Nor is it apparent on what basis the dissent concludes that LINA engaged in prohibited self-dealing under 29 U.S.C. § 1106(b).  There has been no finding that Rochow's disputed benefits constituted "plan assets," or that LINA's actions in failing to segregate the disputed benefits and leaving them in the general fund constituted self-dealing under ERISA.  Without such findings or further explanation, I cannot agree that disgorgement is justified based only on the maxim

---

[2]The circumstances might, however, support a finding that interest at the actual market rates during the period of delay would be inadequate compensation for the delay.

emphasized by the district court—"if you take my money and make money with it, your profit belongs to me." *Rochow*, 851 F. Supp. 2d at 1094 (internal quotation marks omitted).

In the absence of such justifications, disgorgement as an equitable remedy in a denial-of-benefits case should be premised on a finding that the decision to deny benefits was not only arbitrary and capricious but also based on impermissible considerations that call for an equitable judicial response geared toward deterring similar decision making in the future, as, for example, where the denial of benefits is not the product of particular claims evaluators' misguided evaluations, but rather, an organizational policy to delay paying valid claims for as long as possible; or where repeated wrongful denials lead to the conclusion that disgorgement is necessary to assure proper claims processing in the future. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004) (quoting 1 Dobbs § 4.3(5), at 611 n.16); Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011). Further, even when these types of considerations support disgorgement, the court should consider the effect of disgorgement on innocent participants in the plan and tailor the remedy accordingly.

To be clear, a finding that disgorgement is an appropriate remedy in such circumstances would be based on the totality of the circumstances of the denial, as well as the consequences of disgorgement, and would not depend on a finding of a separate and independent injury, which, although relevant, may or may not be present.

In sum, to the extent the majority's bifurcated rule identifies two circumstances or considerations that might justify an award of additional equitable relief, I agree that those circumstances or considerations are relevant; however, to the extent the majority intends to announce a rule that either dictates an award of additional equitable relief where either of those circumstances is present or prohibits such an award where neither is present, I disagree. Ultimately, the governing inquiry is whether additional equitable relief is appropriate, a decision normally left to the sound discretion of the district courts, to be exercised according to the totality of the circumstances surrounding the denial, and subject to review for abuse of discretion. *See Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1103 (6th Cir. 1993). Addressing that question, I conclude that the record as it stands does not support the district court's exercise

of its discretion in awarding the disgorgement ordered here. Thus, I agree that the order should be vacated. I would, however, permit the district court to address on remand the concerns raised here and in the majority opinion, and would not foreclose a disgorgement remedy as "other appropriate equitable relief" if properly supported on remand.

———————————

**DISSENT**

———————————

STRANCH, Circuit Judge, dissenting. The issue before us arises under a remedial statute, fashioned on the precepts of equity, which empowers a plan participant to bring a civil action to "recover benefits due" and "to obtain other appropriate equitable relief." 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3). In the parlance of ERISA and equity jurisprudence, the remedy is to "make whole" the injured. Here, Rochow—a company president whose mental capacity was destroyed over time by a brain infection—sought disability benefits from LINA starting in 2002. Over five years later, in October 2007, he received his first benefit payment (a lump sum of over $300,000), and monthly benefits began. In June 2009, almost seven years after the disability date and eight months after Rochow died in October 2008, LINA paid a second lump sum for underpayment of benefits approximating $420,000.

Rochow sought, and the district court awarded, a make-whole remedy for two ERISA violations committed by LINA, failure to pay benefits due and breach of fiduciary duty. Based on evidence presented, the district court found that LINA engaged in deliberate and willful wrongful acts, created non-existent insurance policy requirements, concocted a knowingly false rationale for its second denial of benefits, closed the administrative record without medical input or evidence, and acted in bad faith. R. 67, Order; *Rochow v. Life Ins. Co. of N. Am.*, 851 F. Supp. 2d 1090, 1101 (E.D. Mich. 2012). Proceedings in the district court confirmed that LINA also engaged in prohibited self-dealing under 29 U.S.C. § 1106(b) in the course of delaying payment of Rochow's disability benefits for more than seven years. During that lengthy period of delay, rather than segregating the disability benefits it owed to Rochow in an interest-bearing account for his later use, LINA commingled Rochow's benefits with company funds in a general equity account used in part for corporate investment. Because Rochow earned a high salary before the onset of his disability, LINA's intentional delay in paying Rochow's substantial disability benefits for more than seven years allowed LINA to earn millions of dollars in profit for its own gain, in breach of its fiduciary duty not to engage in self-dealing. 29 U.S.C. §§ 1104(a)(1), 1106(b). Based on expert evidence, the district court found that LINA's average

rate of return during the seven-year period was 26%. Rochow's health deteriorated during that time and he was forced to meet the financial demands of everyday living and serious illness without employment income or the disability benefits promised under the Plan. LINA's fiduciary wrongdoing and self-dealing warrant equitable remedies under § 1132(a)(3)—an accounting and disgorgement of the considerable profits LINA earned on the benefits it withheld from Rochow.

The majority avers that such equitable remedies are prohibited under ERISA jurisprudence because obtaining a remedy under both § 1132(a)(1)(B) and § 1132(a)(3) amounts to double recovery. Its insistence that Rochow is not entitled to disgorgement of LINA's profit under § 1132(a)(3) rests on a faulty premise—its assumption that Rochow suffered the single injury of LINA's arbitrary and capricious denial of benefits. Maj. Op. at 6. The majority states that, "[a]llowing Rochow to recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would—absent a showing that the § 502(a)(1)(B) remedy is inadequate—result in an impermissible duplicative recovery, contrary to clear Supreme Court and Sixth Circuit precedent. Maj. Op. at 7. Relying primarily on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), the majority concludes that "Rochow is not entitled to relief under the catchall provision" of § 1132(a)(3) because "such relief is unnecessary and unavailable" and "he has an adequate remedy under" § 1132(a)(1)(B). Maj. Op. at 10.

I will demonstrate below that *Varity Corp.* and numerous cases decided after it fully support Rochow's recovery of benefits under § 1132(a)(1)(B) and the disgorgement of LINA's profit under § 1132(a)(3). *Wilkins* is inapplicable to the issues before us because it is legally and factually distinguishable. Wilkins sued for disability benefits under § 1132(a)(1)(B) and failed to prove that his medical condition warranted payment of plan benefits. *Wilkins*, 150 F.3d at 612–13. Trying a second time to obtain plan benefits, he "repackaged" the benefits claim as a breach of fiduciary duty under § 1132(a)(3), but he sought a traditionally legal remedy—compensatory damages. *Id.* at 613–14. We barred the "repackaging" of the claim because Wilkins had an adequate remedy to recover benefits under § 1132(a)(1)(B) and recovery of compensatory

damages would not constitute "other appropriate equitable relief" under § 1132(a)(3).  *Id.* at 615–16.  *Wilkins* thus insures that a plan participant cannot make an end-run around a denial of benefits under § 1132(a)(1)(B) by "repackaging" the claim and seeking compensatory damages under § 1132(a)(3).

In contrast to the facts of *Wilkins*, LINA injured Rochow in two distinct ways:  by arbitrarily and capriciously denying his disability benefits claim and by breaching its fiduciary duties to him.  LINA's denial of benefits breached the Plan terms; LINA's breach of its fiduciary obligations violated ERISA statutes and added the element of wrongdoing to the contract breach. Equity has long recognized that "[a] trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary."  *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).  Unlike Wilkins, Rochow sued under § 1132(a)(1)(B) to recover Plan benefits *and* under § 1132(a)(3) to obtain an accounting and disgorgement of profits wrongfully earned through LINA's breach of its fiduciary duties—two separate remedies for two separate injuries under two separate sections of § 1132.  Unlike Wilkins, Rochow proved that his medical condition warranted payment of Plan benefits.  And unlike Wilkins, Rochow sought his second remedy to attain make-whole relief.  These two remedies are not duplicative and neither repackages the other.  Both remedies are necessary, working in tandem, to make Rochow whole for LINA's ERISA violations.

By falsely characterizing the wrongs Rochow suffered and by denying the availability of equitable remedies, the majority opinion stands at odds with governing law and with the facts before us.  Supreme Court opinions, our precedent, and cases from our sister circuits support the availability of dual ERISA remedies where two distinct injuries exist and two remedies are necessary to make the plan participant or beneficiary whole.  I would affirm the district court, but I would remand the case for a recalculation of the amount of profit LINA must disgorge. Accordingly, I must respectfully dissent from the majority opinion.

## I.  ERISA DEFINES LINA'S DUTIES AS A FIDUCIARY

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  Congress imposed fiduciary duties on ERISA plan sponsors and administrators that are

the highest known to the law, *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003), and in doing so, Congress drew much of ERISA's content from the common law of trusts. *Varity Corp.*, 516 U.S. at 496. These fiduciary duties attach to particular persons or entities engaged in the performance of specific ERISA functions. *Edmonson v. Lincoln Nat'l Life. Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013).

A fiduciary's first obligation is to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). This duty of loyalty extends to the individual plan participants and beneficiaries, not only to the ERISA plan itself. *Varity Corp.*, 516 U.S. at 507; *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571–72 (1985). A fiduciary has "an unwavering duty" to act as a prudent person would act in a similar situation and "for the exclusive purpose" of insuring that benefits are provided to plan participants and their beneficiaries. 29 U.S.C. § 1104(a); *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 751 (6th Cir. 2014); *Gregg*, 343 F.3d at 841; *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002). ERISA expressly forbids a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). The "absolute bar against self dealing" prevents a fiduciary from "realizing a financial gain" at the expense of the plan participants or beneficiaries. *Hi-Lex Controls, Inc.*, 751 F.3d at 750 (quoting *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988)); *Pipefitters Local 636 Ins. Fund v. Blue Cross and Blue Shield of Mich.*, 722 F.3d 861, 868 (6th Cir. 2013).

## II. ERISA DEFINES REMEDIES FOR BREACH OF FIDUCIARY DUTY

### A. Congress authorized equitable remedies in § 1132(a)(3)

Congress designed ERISA to include equitable remedies that run directly to the individual plan participant or beneficiary who is injured by a fiduciary breach. The Supreme Court tells us that the "words of [§ 1132(a)(3)]—'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title'—are broad enough to cover individual relief for breach of a fiduciary obligation." *Varity Corp.*, 516 U.S. at 510. The structure of § 1132 reveals that one of the two catchall provisions providing appropriate equitable relief for breaches of fiduciary duty that run to an injured beneficiary is § 1132(a)(3). *Id.* at 512. This

catchall remedial provision acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id.*

In the majority's view, *Varity Corp.* emphasizes "that ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury" and that "equitable relief is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant's injury. In other words, a claimant cannot pursue a breach-of-fiduciary-duty claim under § [1132](a)(3) based solely on an arbitrary and capricious denial of benefits where the § [1132](a)(1)(B) remedy is adequate to make the claimant whole." Maj. Op. at 8–9. If that were the case, the majority worries, then any arbitrary and capricious denial of plan benefits would potentially subject a plan fiduciary to disgorgement of profits under § 1132(a)(3) "after the claimant recovered for wrongful denial of benefits" under § 1132(a)(1)(B). Maj. Op. at 9.

This unfounded fear is allayed by a proper interpretation of *Varity Corp.*, the cases following it, and the Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011). These cases demonstrate that a participant or beneficiary may recover under § 1132(a)(1)(B) for an arbitrary and capricious denial of plan benefits and may recover further equitable relief under § 1132(a)(3) to redress a breach of fiduciary duty. Together these remedies provide the make-whole relief Congress intended.

In *Varity Corp.*, the plaintiffs' employer, serving also as administrator of a self-funded employee welfare benefit plan, persuaded the plaintiffs by deception to transfer their employment to a newly-formed subsidiary, thereby withdrawing voluntarily from the welfare benefit plan and forfeiting benefits under it in exchange for the employer's assurances that the plaintiffs would receive the same benefits following transfer. 516 U.S. at 491–94. Just as Varity Corporation had planned, the insolvency of the new subsidiary stripped the employees of welfare benefits. *Id.* at 494. The employees could not sue under § 1132(a)(1)(B) to recover benefits because the plan was defunct. They could, however, and did sue for and obtain "appropriate equitable relief" under § 1132(a)(3)—their reinstatement to a different employee plan. *Id.* at 495.

The Supreme Court affirmed the reinstatement, holding that individuals may sue under the catchall provision of § 1132(a)(3) to obtain "other appropriate equitable relief" to remedy a

breach of fiduciary duty.  *Id.* at 510–13.  Given the objectives of the ERISA statute, the case explains, "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id.* at 513.

Like the majority here, the *amici* in *Varity Corp.* worried that an individual would be able to "repackage" a denial of benefits claim that is normally reviewed deferentially under the arbitrary and capricious standard of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), and transform it into a breach of fiduciary duty claim decided under the "rigid level of conduct" expected of fiduciaries.  *Id.* at 513–14.

The Supreme Court dismissed their concern.  "[C]haracterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits." *Id.* at 514.  "After all, *Firestone . . .* based its decision upon the same common-law trust doctrines that govern standards of fiduciary conduct." *Id.* at 514–15.  Dismissing *amici*'s concern that "lawyers will complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing," *id.* at 514, the Court explained "that where Congress elsewhere provided *adequate* relief for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'" *Id.* at 515 (emphasis added).

The majority transforms the Supreme Court's conditional language into an absolute bar to Rochow's claims, misconstruing the Court's instruction that ERISA authorizes "further equitable relief" if relief available "elsewhere" is inadequate.  This may be the unusual case that entails two injuries, but *Varity Corp.* provides no basis for denying an equitable remedy necessary to accomplish make-whole relief.  The repackaging fears the majority expresses, like those raised by *amici* in *Varity Corp.*, should be met with the same response:  there is not "any ERISA-related purpose that denial of a remedy would serve.  Rather, . . . granting a remedy is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law." *Id.*

*B.  Remedies under § 1132(a)(3) were traditionally available in equity*

Section 1132(a)(3) "countenances only such relief as will enforce" ERISA's provisions or the terms of the plan, and it "authorizes the kinds of relief 'typically available in equity' in the

days of 'the divided bench,' before law and equity merged." *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1544, 1548 (2013) (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993)). The most definitive explanation of the types of equitable remedies available under § 1132(a)(3) is found in the Supreme Court's pronouncement in *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011). Because Congress specified that courts may grant "other appropriate equitable relief" under § 1132(a)(3), courts may employ remedies that were traditionally available in equity, including reformation of contract, injunctions, mandamus, restitution, and surcharge, which is a monetary remedy against a trustee or fiduciary. *Id.* at 1878–80. "[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Id.* at 1880. This is because courts sitting in equity "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* (citing Restatement (Third) of Trusts § 95, and Comment *a* (Tent. Draft No. 5, Mar. 2, 2009)). The surcharge remedy extends "to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary" and can be used to accomplish "make-whole relief." *Id.* The equity courts did not require a showing of detrimental reliance in surcharge cases but "would 'mold the relief to protect the rights of the beneficiary according to the situation involved.'" *Id.* at 1881 (quoting Bogert's Trusts & Trustees § 861, at 4). A fiduciary may be surcharged under § 1132(a)(3) if the plaintiff proves actual harm and causation by a preponderance of the evidence, and actual harm might "come from the loss of a right protected by ERISA or its trust-law antecedents." *Id.*

In explaining the scope of equitable remedies available under § 1132(a)(3), *Amara* also clarified two previous Supreme Court cases, correcting lower court decisions that had interpreted the cases as narrowing the scope of "other appropriate equitable relief" available under § 1132(a)(3). *Amara*, 131 S. Ct. at 1878 (referring to *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993), and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). *Mertens* does not foreclose equitable relief against a plan fiduciary, as some courts had held, because in that case a plan beneficiary sought compensatory damages from a non-fiduciary, a private firm that provided actuarial services to a trustee. *Id.* (citing *Mertens*, 508 U.S. at 253, 255, 256). Relief was not available under § 1132(a)(3) because the beneficiary sought traditionally legal, not equitable relief, against a non-fiduciary. *Id.* In *Great-West*, the suit was brought by the fiduciary

against the beneficiary. After the injured beneficiary recovered compensatory damages from a tortfeasor, the fiduciary sought reimbursement for the medical expenses it had paid on the beneficiary's behalf. *Id.* The fiduciary tried to place a lien on the money the beneficiary collected, but a lien is traditionally considered to be legal, not equitable, relief. *Id.* at 1878–79. Because the fiduciary did not seek an equitable remedy—the placement of a constructive trust on the particular money the tortfeasor paid to the beneficiary—the Court determined that equitable relief under § 1132(a)(3) was not available. *Id. Mertens* and *Great-West* thus do not present any obstacle to Rochow's use of § 1132(a)(3) to recover traditional equitable relief from LINA, a breaching fiduciary, even if that remedy is formulated to avoid the unjust enrichment of the fiduciary. *See Amara*, 131 S. Ct. at 1879–80.

Reading *Amara* and *Varity Corp.* together, we see that the remedies awarded to Rochow comport with the statute, its purposes, and trust law. The principle is clear that a plaintiff may pursue relief under both § 1132(a)(1)(B) and (a)(3) if wrongly denied benefits are recovered under (a)(1)(B) and "other appropriate equitable relief"—something in addition to the award of benefits—is necessary to make the plaintiff whole for a breach of fiduciary duty. In this case, requiring LINA to disgorge its profits earned on wrongly withheld benefits, accomplished under (a)(3), was necessary to make Rochow whole and to prevent LINA's unjust enrichment.

Our sister circuits recognize that *Amara* corrects misunderstandings of the lower courts that have led to the denial of equitable remedies authorized by § 1132(a)(3). After *Amara*, the Fourth Circuit explained, it is clear "that Section § 1132(a)(3) allows for remedies traditionally available at equity and that those remedies include surcharge and estoppel[,]" remedies "at the heart" of the appeal before that court. *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 177–78 (4th Cir. 2012). The Fifth Circuit characterized *Amara* as stating "an expansion of the kind of relief available" under § 1132(a)(3) "when the plaintiff is suing a plan fiduciary and the relief sought makes the plaintiff whole for losses caused by the defendant's breach of a fiduciary duty." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013). The Seventh Circuit pointed to *Amara* as "clarify[ing] that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty." *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 878–79 (7th Cir. 2013). The Eighth Circuit observed that "*Amara* changed

the legal landscape by clearly spelling out the possibility of an equitable remedy under [§ 1132(a)(3)] for breaches of fiduciary obligations by plan administrators." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 722 (8th Cir. 2014). And the Ninth Circuit recently reversed and remanded an ERISA case in part so that the district court could determine in the first instance under § 1132(a)(3) whether a trustee's fiduciary breach injured the beneficiary and whether the surcharge remedy discussed in *Amara* is available to the beneficiary. *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 962–63 (9th Cir. 2014).

Members in the majority here have read *Amara* to leave "open the possibility that 'appropriate equitable relief' could potentially be awarded" under § 1132(a)(3). *Lipker v. AK Steel Corp.*, 698 F.3d 923, 931 n.4 (6th Cir. 2012). In this case, the majority *agrees* with *Lipker* and the other circuit cases cited above that equitable relief is available under § 1132(a)(3) "to redress an ERISA violation by a plan fiduciary." Maj. Op. at 14. And two of our prior cases acknowledge the availability of dual ERISA claims and remedies under certain circumstances. In *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710, 718 (6th Cir. 2005), we reversed the dismissal of a claim under § 1132(a)(3), because that claim challenged defects in systemic, plan-wide claims-handling procedures, an injury different from the denial of claims for individual benefits brought under § 1132(a)(1)(B). Similar reasoning is apparent in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–41 (6th Cir. 2007), where we determined that the plaintiff asserted two distinct injuries permitting claims and recovery under both § 1132(a)(1)(B) and (a)(3). We thus learn from our own cases that ERISA's remedy provisions are not mutually exclusive.

### III.  LINA BREACHED ITS FIDUCIARY DUTY TO ROCHOW

The majority nonetheless denies relief on the ground that "Rochow did not suffer an injury remediable" under § 1132(a)(3). Maj. Op. at 14. That statement is plainly contrary to the factual record and extensive case law concerning the types of injuries that plan participants or beneficiaries may redress through equitable remedies available under § 1132(a)(3).

We previously recognized that LINA breached its fiduciary duties, *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 866 (6th Cir. 2007) ("*Rochow I*"), and the majority acknowledges as much. Maj. Op. at 3. We ruled in the earlier appeal that LINA's decision to deny Rochow

disability benefits was not made solely in Rochow's interest—in other words, LINA breached its duty of loyalty to Rochow—and LINA's decision to deny benefits was not made for the exclusive purpose of providing benefits to Rochow as required by § 1104(a)(1). *Rochow I*, 482 F.3d at 866.

The majority opinion and the concurrence point out that this case comes to us with a complex procedural history, pockmarked by irregularities. While I don't disagree that the case is procedurally complex, I do disagree with the conclusion that the district court reached a final judgment prior to our decision in *Rochow I* and that it violated the mandate rule by permitting the parties to litigate the disgorgement remedy for the breach of fiduciary duty claim after *Rochow I*. To be sure, the district court clerk docketed a separate document entitled "Judgment" on the same day that the district court entered the summary judgment order later affirmed in *Rochow I*, but the "record demonstrates . . . that [this] document was not a judgment but a mere clerical error." *Philhall Corp. v. United States*, 546 F.2d 210, 213 (6th Cir. 1976). The court had ruled on LINA's liability in the context of Rochow's motion for partial summary judgment and LINA's cross-motion for summary judgment. The court had not made the requisite determination of the remedy. With this important issue outstanding, certainly the district court did not "intend[] the document to be a final judgment." *Id.*; 15B Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 3914.28 (2d ed.) ("[A] summary judgment that determines liability but leaves damages or other relief open for further proceedings is not final.")

Moreover, the document purporting to be a final judgment "was not legally sufficient to constitute a final judgment." *Philhall Corp.*, 546 F.2d at 213. The Supreme Court has instructed that "it is necessary to determine whether the language . . . (of any purported judgment) embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case. If it does so, it constitutes his final judgment." *Id.* (quoting *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958)). "[A] final judgment for money must, at least, determine or specify the means for determining, the amount." *F. & M. Schaefer Brewing Co.*, 356 U.S. at 233. As in *Philhall Corp.*, 546 F.2d at 213, the document entered by the clerk below "did not have the indicia of a final judgment" because it failed to state that Rochow had prevailed and it did not memorialize any monetary

award.  Instead, the document erroneously "dismissed" the case, clearly contradicting the district court's summary judgment order finding in favor of Rochow on liability.  LINA filed a notice of appeal, effectively divesting the district court of jurisdiction to proceed with the litigation pending resolution of the appeal.

After our mandate issued in *Rochow I*, the concurrence posits, the district court lacked jurisdiction to take any further action in the case by operation of the mandate rule.  The *Hamilton* case cited in the concurrence points out that the mandate rule is "discretionary, rather than jurisdictional," *United States v. Hamilton*, 440 F.3d 693, 697 (5th Cir. 2006), and we have said the same thing, albeit in an unpublished case.  *Mylant v. United States*, 48 F. App'x 509, 512 (6th Cir. 2002) (observing that the mandate rule is one of "policy and practice, not a jurisdictional limitation").  "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals."  *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  The concurrence recognizes that the *Rochow I* panel affirmed the district court's summary judgment order on liability and did not issue any type of remand to the district court.  Although the district court was bound to honor our *Rochow I* decision in completing the litigation, as "with all applications of the law of the case doctrine," the district court could "consider those issues not decided expressly or impliedly by the appellate court." *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992).  Taking up the case again after the *Rochow I* appeal, the district court determined with finality a monetary award for Rochow that included disgorgement for LINA's fiduciary breach. The court's final decision in no way conflicted with the *Rochow I* mandate.  In this second appeal, a panel of our court affirmed the district court's final decision, *Rochow v. LINA*, 737 F.3d 415 (6th Cir. 2013) ("*Rochow II*"), and that same final decision is presently before us for *en banc* review.  Consequently, any procedural missteps that occurred earlier in the case are ultimately immaterial for purposes of our *en banc* decision.

Contrary to the majority's assertion that the district court failed to identify any grounds to support a breach of fiduciary duty claim, Rochow asks us to affirm the district court's findings that LINA's conduct involved a number of deliberate and willful wrongful acts, including requiring Rochow to meet insurance policy requirements that did not exist, devising a knowingly false rationale for denying his benefits appeal, and acting without appropriate medical input or

evidence. R. 67, Order; *Rochow*, 851 F. Supp. 2d at 1101. On the record before us, these findings are not clearly erroneous. *See Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706 (6th Cir. 2014). LINA's fiduciary wrongdoing, separate from its arbitrary and capricious denial of plan benefits, warrants an equitable remedy under § 1132(a)(3).

## IV. BREACH OF FIDUCIARY DUTY REQUIRES A REMEDY

Persisting in the fiction that Rochow seeks to recover twice for the same injury, the majority incorrectly posits that "the district court thus treated its finding of an arbitrary and capricious denial of benefits, in and of itself, as a breach of fiduciary duty," and claims to be unaware of any "persuasive authority for the proposition that a wrongful denial of benefits in and of itself constitutes a breach of fiduciary duty." Maj. Op. at 7 n.1. Even if that were the issue—and it is not because LINA engaged in fiduciary misconduct in addition to denying Rochow's benefits—at least four circuits besides our own (the Second, Third, Seventh, and Eighth) recognize that a fiduciary's arbitrary and capricious delay in paying benefits due under a plan *in itself* can constitute a breach of fiduciary duty. I begin with our own precedent.

More than twenty years ago we stated the well-established principle that "ERISA requires that a retirement plan be operated for the exclusive benefit of the employees and beneficiaries." *Sweet v. Consol. Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir. 1990). Although we assumed there that a trustee acted prudently in withholding pension funds until a certain date, we nonetheless held that the delay in payment conferred a benefit on the trustee. *Id.* "Any additional time one gains, rightfully or wrongfully, in not having to submit payment of a sum of money owed another is without doubt a benefit. Moreover, the payee . . . has been deprived of the benefit of those payments." *Id.* We expressly held that "[t]o allow the Fund to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment. Further, the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his." *Id.* (internal quotation marks omitted).

Ten years after *Sweet* we upheld a district court's decision requiring an ERISA fiduciary to pay to the plan participant class certain benefits along with the rate of return the fiduciary actually realized on the use of that withheld money. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 977–

78, 986 (6th Cir. 2000).　TRW argued that imposing the actual rate of return was "unprecedented," *id.* at 986, but we disagreed, pointing to the Seventh Circuit's decision in *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, 896 F.2d 228 (7th Cir. 1990). In that case an employee's widow contended that the administrator of a retirement plan violated its fiduciary duties to her and to her deceased husband causing a loss in retirement benefits. *Id.* at 230. The Seventh Circuit held that § 1132(a)(3) authorizes a civil action by a participant or beneficiary to obtain "appropriate equitable relief" for a violation of plan terms and that equitable relief to remedy a breach of fiduciary duty can include a payment of money. *Id.* (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 154 n.10 (1985)).　Because the retirement plan had held money that belonged to the widow, the Seventh Circuit stated: "Now that the collateral dispute is over, the plan must return [the money] to her *together with the fruits that it has gleaned by holding on to it.*" *Id.* at 236–37 (emphasis added). Relying on this passage from *Lorenzen* and our own prior opinion on unjust enrichment, *Sweet*, 913 F.2d at 270, we held that using the rate of return "actually realized by TRW on the relevant funds seems an appropriate way of avoiding unjust enrichment." *Rybarczyk*, 235 F.3d at 986. Importantly, we said that requiring TRW to pay the actual rate of return "*merely deprives TRW of its profit on the wrongfully denied benefits.*" *Id.* (emphasis added). We decided this approach was equitable, not punitive, and appropriate under the circumstances where TRW "would arguably receive a windfall" if we permitted TRW to pay compensation for the delayed payment of benefits to the plaintiff that was lower than TRW's actual rate of return. *Id.* at 987.

*Sweet* and *Rybarcyzk* align closely with the law of our sister circuits. The Second Circuit considered a case in which MetLife denied benefits for nearly five years after submission of a claim, but then reversed its prior denials without explanation and paid retroactive benefits in a lump sum without compensating the claimant for the delay in payment. *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 226 (2d Cir. 2002). Having received disability payments after almost five years of delay, Dunnigan filed suit under § 1132(a)(3) alleging that MetLife breached its fiduciary duties by delaying payment and MetLife was unjustly enriched through its breach. *Id.* at 226–27. Dunnigan asked for a constructive trust on the amount MetLife earned by failing to pay the delayed benefits when due or, alternatively, restitution equal to the amount MetLife earned on the late payment and/or disgorgement of MetLife's profits. *Id.* at 227. The Second

Circuit ruled that MetLife's delay in paying benefits long after Dunnigan was entitled to receive them constituted a breach of fiduciary duty because the "delay enriche[d] the fiduciary at the expense of the beneficiary." *Id.* at 230.  The court further concluded that no showing of bad faith by MetLife was required in order for Dunnigan to prevail, *id.* at 229–30, and she was entitled to an "equitable make-whole remedy" under § 1132(a)(3) for MetLife's breach of fiduciary duty. *Id.* at 229.  The court vacated the dismissal of Dunnigan's suit and remanded for further proceedings. *Id.* at 232.

The Seventh Circuit reached similar decisions in two cases, *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495 (7th Cir. 1999), and *May Department Stores Co. v. Federal Insurance Co.*, 305 F.3d 597 (7th Cir. 2002), both involving § 1132(a)(3) claims for equitable remedies in addition to payment of benefits.  In *Clair*, participants in a defined-contribution retirement plan sued for breach of fiduciary duty because their benefits were not paid to them in a timely fashion and no compensation for the delay was offered.  *Clair*, 190 F.3d at 496–97.  The participants characterized their remedy as "restitution of the wrongful gain that the plan obtained by having the interest-free use of money rightfully theirs under the terms of the plan." *Id.* at 498. Explaining that restitution can be either legal or equitable, the court noted that restitution is equitable when the person seeking the remedy complains of a breach of trust, as the plaintiffs did.  *Id.*  Constructive trust "is an equitable remedy commonly sought and granted in cases of unjust enrichment.  It operates much like restitution—indeed it is sometimes referred to as a restitutionary remedy, but it is securely equitable because it is never a legal remedy." *Id.* (citing 1 Dan B. Dobbs, *Law of Remedies* § 4.3, at 587 (2d ed. 1993)).  According to the Seventh Circuit, "such relief is squarely within the scope of" § 1132(a)(3).  *Id.* at 499.  Although the plaintiffs in *Clair* did not prevail on the merits, the court determined that they were "entitled to maintain this suit" under § 1132(a)(3).  *Id.*

In *May Department Stores Co.*, 305 F.3d at 603, the Seventh Circuit followed *Clair* and the Second Circuit's *Dunnigan* opinion to conclude that the "wrongful withholding of benefits due can entitle the beneficiary to impose a constructive trust on interest on the withheld benefits, an equitable remedy that results in a money payment to the plaintiff" under § 1132(a)(3).  The court explained:

By withholding benefits, a plan can obtain interest that would otherwise be obtained by the beneficiary. That interest is not itself a benefit, and so the beneficiary cannot bring a suit under (a)(1)(B) to recover it. But he can sue to recover it under (a)(3), because it is an amount by which the plan has unjustly enriched itself, and unjust enrichment is a basis, indeed the usual basis, for imposing a constructive trust on a sum of money.

*Id.* at 603 (citing *Wsol v. Fiduciary Mgt. Assoc., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001), and *Fisher v. Trainor*, 242 F.3d 24, 31 (1st Cir. 2001)).

The same principles govern in the Third Circuit. In *Fotta v. Trustees of United Mine Workers of America*, 165 F.3d 209, 211 (3d Cir. 1998), a plan participant invoked § 1132(a)(1)(B) and § 1132(a)(3) to recover compensation for delayed payment of benefits where the benefits ultimately were paid without litigation. The Third Circuit determined that §1132(a)(3) was "the appropriate vehicle" to recover monetary compensation for delayed benefits because such an award "serves to prevent unjust enrichment. Restitution—the traditional remedy for unjust enrichment—is widely, if not universally, regarded as a tool of equity." *Id.* at 213 (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) ("Money damages are considered equitable when 'they are restitutionary.'")). The court rejected the notion that it was engrafting a remedy on a statute that Congress did not intend to provide. *Id.* at 214. Rather, the court determined that it "effectuate[d] ERISA's objectives by recognizing, under principles of equity, that beneficiaries should be fully compensated and that any unjust enrichment of plans at beneficiaries' expense should be avoided." *Id.* Accordingly, relying on § 1132(a)(3), the court held "that a beneficiary of an ERISA plan may bring an action for interest on delayed benefits payments . . . irrespective of whether the beneficiary also seeks to recover unpaid benefits. Because the remedy we recognize here is equitable in nature, its award involves an exercise of judicial discretion." *Id.*

Significantly, Supreme Court Justice Alito, then a circuit judge on the Third Circuit, concurred in the *Fotta* opinion, observing:

If the plaintiff in this case can establish that the trustees violated the plan by failing to pay his benefits on time, an award of interest would constitute "appropriate equitable relief." Such an award is recognized as appropriate equitable relief in comparable circumstances under the law of trusts. *See* Restatement (2d) of Trusts § 207 at 470 (1959); 3 Austin Wakeman Scott and

William Franklin Fratcher, *The Law of Trusts* § 207.1 at 262–63 (4th ed. 1987); *Nedd v. United Mine Workers of America*, 556 F.2d 190, 207 (3d Cir. 1977); *Toombs v. Daniels*, 361 N.W.2d 801, 810 (Minn. 1985). Thus, this is not a case like *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), in which we were asked to supplement the remedies specified in the statute.

*Id.* at 215.

In addition to the Second, Third and Seventh Circuits, the Eighth Circuit also adheres to the proposition that a fiduciary's delay in paying benefits due under a plan constitutes a breach of fiduciary duty that may be rectified through an action filed under § 1132(a)(3). "It is undisputed that an accounting for profits—the remedy that allows for the disgorgement of profits awarded by the district court—is a type of relief that was typically available in equity and therefore is appropriate under § 1132(a)(3)(B)." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004). "An accounting for profits is one of a category of traditionally restitutionary remedies in equity, and is often invoked in conjunction with a constructive trust." *Id.* The court explained that "[a]n accounting is imposed when the property subject to the constructive trust produces profits while in the defendant's possession. The defendant is forced to disgorge those profits, although it is not necessary for the plaintiff to identify any particular *res* or fund of money holding the profits." *Id.*

Significantly, "[u]nder traditional rules of equity, a defendant who owes a fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching that duty, *even if the defendant's breach was simply a failure to perform its obligations under a contract*. *Id.* (emphasis added). If a fiduciary breaches a contract and also breaches a fiduciary duty, that fiduciary can be forced to disgorge the profits he earned as a result of his wrong. *Id.* (quoting 1 Dobbs § 4.3(5), at 611 n.16). "The important ingredient added by the fiduciary status, however, is not that status in itself; what is added is wrongdoing as distinct from contract breach." *Id.* at 1008–09 (quoting 1 Dobbs § 4.3(5), at 611 n.16; *Valdes v. Larrinaga*, 233 U.S. 705, 709 (1914) ("holding that a 'proper case for equitable relief' existed where the defendant breached a fiduciary duty to the plaintiff by failing to pay money owing under the contract"). Based on these principles, the Eighth Circuit held that First Reliance owed a fiduciary duty to Parke, First Reliance breached that duty, and First Reliance could be forced under § 1132(a)(3) to disgorge its profits earned as a result of the breach. *Id.* at 1009. *See also Skretvedt v. E.I.*

*DuPont De Nemours*, 372 F.3d 193, 212–14 (3d Cir. 2004) (following *Fotta* and *Parke* to hold that an ERISA beneficiary could force disgorgement of profits earned on withheld benefits).  As do several other circuits, the Eighth Circuit authorizes the remedy that the district court below awarded to Rochow.

Thus, our own cases and a litany of others from four of our sister circuits undermine the majority's premise that no legal basis exists to conclude that LINA's delay in payment of benefits to Rochow constituted both an arbitrary and capricious denial of plan benefits under § 1132(a)(1)(B) *and* a breach of LINA's fiduciary duties remediable under § 1132(a)(3).  The majority ignores these cases because they correct the majority's mistaken impression that the district court's "award reflects concern that LINA had wrongfully gained something, a consideration beyond the ken of ERISA make-whole remedies."  Maj. Op. at 9.  Not only does the district court's award appropriately address LINA's wrongful gain at Rochow's expense, but the relief for the wrongful gain falls squarely within ERISA's equitable remedies, as recognized by the Supreme Court, our court, and other circuits.  "ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs," and the remedy of disgorgement exists to deprive "wrongdoers of ill-gotten gains," not "to compensate for a loss."  *Edmondson*, 725 F.3d at 415 (internal quotation marks omitted); *Leigh v. Engle*, 727 F.2d 113, 122 (7th Cir. 1984) ("ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss.").  According to the majority, the payment of benefits, attorney's fees, and prejudgment interest are sufficient to compensate Rochow for his injuries.  But only the disgorgement of ill-gotten profits can wholly remedy LINA's breach of its fiduciary duties.

The court below got it exactly right.  By arbitrarily and capriciously failing to pay Rochow benefits owed under the terms of the plan and by delaying the payment of full benefits for more than seven years to enrich itself, LINA violated both the plan terms and its fiduciary duties under ERISA.  LINA's wrongful gain of profit, earned through breach of its fiduciary duties, can be equitably remedied under § 1132(a)(3) by ordering an accounting and by directing LINA to disgorge the profit and pay it directly to Rochow.  *See Great-West Life & Annuity Ins. Co.*, 534 U.S. at 214 n.2 (recognizing "an accounting for profits, a form of equitable restitution").

"The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me." *Nickel v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 290 F.3d 1134, 1138 (9th Cir. 2002).

## V.  THE DISGORGEMENT AWARD MUST BE RECALCULATED

I would return the case to the district court, however, for a recalculation of the award to Rochow.  The figure awarded by the district court seems to derive from the total shown on Rochow's corrected Exhibit A filed on May 25, 2012, plus daily interest the court added until July 24, 2012, when the court filed its Order Requiring Disgorgement.  R.121-2 Page ID 3712.

LINA objected below to the corrected Exhibit A, pointing out several significant errors in it.  The most conspicuous problem is that full profits are calculated through March 2012, R. 121-2 Page ID 3725 (and by the court through July 2012), even though Exhibit A confirms that LINA made all required payments to Rochow or his estate by September 2009, with the exception of $2,065.52.  R. 121-2 Page ID 3722.  The additional errors LINA identified in its June 2012 filing with the district court, R. 122, may warrant further reductions in the amount of profits ordered disgorged by the district court.  I would therefore reverse the award as calculated and remand the case to the district court for reconsideration.

## VI.  CONCLUSION

We do not create new, double remedies out of whole cloth if we affirm the district court's decision to require LINA to disgorge the profit it earned by breaching its fiduciary duties to Rochow.  Nor will the sky fall if we affirm this remedy, as the Supreme Court aptly pointed out in response to the concerns of *amici* in *Varity Corp.*, 516 U.S. at 513–14.  By recognizing that some few cases may include claims and remedies for injuries incurred under both § 1132(a)(1)(B) and § 1132(a)(3), we simply join the mainstream view of our sister circuits acknowledging the trust law principles that undergird ERISA's equity jurisprudence.

In this case, the disgorgement remedy is appropriate based on the evidence and the district court's findings concerning LINA's malfeasance, the length of the delay in paying benefits due, and the extraordinary profit LINA reaped from its malfeasance.  Practical considerations abound.  Allowing LINA to retain its profit creates an incentive for claims

administrators to delay paying much-needed benefits to participants and beneficiaries while investing that money for their own gain.  LINA's conduct undercompensates the participant or beneficiary by forcing him to absorb expenses incurred as a result of the delay in the payment of benefits while LINA gains from delaying the claims process as long as possible.  Permitting LINA to keep its profit also encourages fiduciaries to commingle plan assets with company funds.

The courts will not often come across a case as troubling as this one.  I recognize, as will district courts, that disgorgement of profit should be used sparingly and only when equity requires it.  In the ordinary benefits case—where there is a wrongful denial of benefits but no breach of fiduciary duties like the ones here—an award of prejudgment interest might be sufficient to compensate the beneficiary for the lost time value of money.  *See, e.g.*, *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 679, 686 (6th Cir. 2013); *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998).  But where an arbitrary and capricious denial of benefits is coupled with a breach of fiduciary duty, as it is here, ERISA provides a make-whole remedy that includes appropriate equitable relief under § 1132(a)(3).

Because the majority holds that ERISA bars the make-whole remedy awarded to Rochow, I respectfully dissent.